IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MERLE T. RUTLEDGE, JR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00066 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF DANVILLE, VA, ET AL, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Plaintiff Merle T. Rutledge, Jr. ("Plaintiff"), proceeding *pro se*, filed an application in this Court to proceed *in forma pauperis* ("IFP") on November 18, 2013. On November 21, 2013, I denied Plaintiff's IFP application and issued an Order to Show Cause why Plaintiff should not be subject to a pre-filing injunction [ECF No. 4]. Plaintiff appeared before this Court on December 5, 2013, and was provided an opportunity to be heard. After careful review and consideration, and for the reasons stated below, I will **ENJOIN** Plaintiff in accordance with the previously filed Pre-Filing Injunction [ECF No. 7].

I. **BACKGROUND**

Plaintiff has a history of filing frivolous lawsuits against police officers, local government entities, and other defendants. Pursuant to 28 U.S.C. § 1915(e)(2)(B), I have denied at least four separate applications for Plaintiff to proceed *in forma pauperis*.[1] On a separate

---

[1] *See Rutledge v. Lancaster*, No. 4:13CV00043 (W.D. Va. Aug. 15, 2013) (denied as frivolous, failing to state a claim, and for lack of standing); *Rutledge v. Va. State Trooper Officer Davis*, No. 4:12CV00046 (W.D. Va. Oct. 18, 2012) (denied as frivolous and for failure to state a claim); *Rutledge v. Town of Chatham*, No. 4:12CV00033 (W.D. Va. Aug. 14, 2012) (denied for lack of standing and jurisdiction); *Rutledge v. Town of Chatham*, No. 4:10CV00054, 2010 WL 4569913 (W.D. Va. Nov. 5, 2010) (denied as an improper attempt to revive prior litigation).

occasion, I allowed Plaintiff to proceed *in forma pauperis*, but later dismissed the claims.[2] Plaintiff has engaged in a similar pattern of behavior with courts in the Eastern District of Virginia,[3] and currently has at least one case pending before a court in that district.[4] Notwithstanding any state court litigation, Plaintiff has filed at least twelve (12) lawsuits in federal court since March of 2009. A brief survey of these cases is appropriate to provide some measure of context for the present Injunction.

On March 23, 2009, Plaintiff filed an application to proceed *in forma pauperis* in a civil action against the City of Norfolk, the Norfolk Police Department, and Officer N.E. Karangelen. Plaintiff alleged that the police illegally stopped and questioned him while driving, and argued that the officer had a pretextual basis for the stop. *See* Complaint, *Rutledge v. City of Norfolk*, No. 2:09CV00129 (E.D. Va. Mar. 30, 2009), ECF No. 3, *aff'd*, 358 F. App'x 409 (4th Cir. 2009) (per curiam) (unpublished). In particular, since the stop occurred on Valentine's Day, Plaintiff alleged that it caused him mental anguish. *See* Dismissal Order at 1, *Rutledge*, No. 2:09CV000129, ECF No. 22. Although Plaintiff was not arrested, ticketed, or cited for any violation of the law, and offered nothing more than his belief that race caused the stop, he argued that it infringed his rights under the Fourth Amendment and Equal Protection Clause, *id.* at 1, 3–

---

[2] *See Rutledge v. Town of Chatham*, No. 4:10CV00035, 2010 WL 3835662 (W.D. Va. Sept. 30, 2010) (dismissing claims against certain defendants without prejudice), 2010 WL 4791840 (W.D. Va. Nov. 18, 2010) (dismissing the remaining claims with prejudice), *aff'd sub nom. Rutledge v. Roach*, 414 F. App'x 568 (4th Cir. 2011) (per curiam) (unpublished).

[3] *See Rutledge v. Va. Att'y Gen. Ken Cuccinelli*, No. 2:11CV00286 (E.D. Va. July 29, 2011) (dismissed for insufficiency of the complaint and failure to comply with an order to show cause); *Rutledge v. Hooters of America, Inc.*, No. 2:10CV00608 (E.D. Va. Dec. 20, 2010) (dismissed for failure to state a claim); *Rutledge v. Va. Dep't of Soc. Servs.*, No. 2:09CV00483 (E.D. Va. Nov. 4, 2009) (dismissed for failure to state a claim); *Rutledge v. City of Norfolk*, No. 2:09CV00157 (E.D. Va. Apr. 28, 2009) (dismissed for failure to state a claim), *aff'd*, 334 F. App'x 567 (4th Cir. 2009) (per curiam) (unpublished); *Rutledge v. City of Norfolk*, No. 2:09CV00129 (E.D. Va. July 30, 2009) (dismissed for failure to state a claim), *aff'd*, 358 F. App'x 409 (4th Cir. 2009) (per curiam) (unpublished).

[4] *See Rutledge v. Officer Tessier*, No. 2:13CV00470 (E.D. Va. Aug. 22, 2013).

4, and demanded "$2 million dollars or a simple letter of apology and reprimand for the police officer," Complaint at 5, *supra*. Although the district court allowed Plaintiff to proceed IFP, it subsequently dismissed the action for failure to state a claim on July 30, 2009. *See* Dismissal Order, *supra*. Plaintiff appealed, and the Fourth Circuit affirmed the dismissal. *See Rutledge v. City of Norfolk*, 358 F. App'x 409 (4th Cir. 2009) (per curiam) (unpublished).

Prior to the district court's dismissal, however, Plaintiff had already filed another *pro se* suit in the Eastern District of Virginia. On April 8, 2009, sixteen (16) days after he filed the aforementioned suit, Plaintiff sought leave to proceed *in forma pauperis* against the City of Norfolk in a separate action. In this case, Plaintiff argued that the use of video surveillance in public places by the City of Norfolk violates the Fourth Amendment to the U.S. Constitution, and asserted a $10 million dollar claim on behalf of homeowners. *See* Complaint at 1–2, *Rutledge v. City of Norfolk*, No. 2:09CV00157 (E.D. Va. Apr. 16, 2009), ECF No. 3, *aff'd*, 334 F. App'x 567 (4th Cir. 2009) (per curiam) (unpublished). Although he did not actually allege that he had been videotaped or injured in any way as a result of the videotaping, Plaintiff nevertheless sought to reform police procedures to eliminate warrantless video surveillance in all "public and private residences." *See* Dismissal Order at 1, *Rutledge*, No. 2:09CV000157, ECF No. 5. The district court dismissed the action for failure to state a claim on April 28, 2009, and the Fourth Circuit again affirmed the dismissal. *See Rutledge v. City of Norfolk*, 334 F. App'x 409 (4th Cir. 2009) (per curiam) (unpublished).

During the pendency of the appeals of the two aforementioned cases, Plaintiff filed his third *pro se* action within a period of approximately six (6) months in the Eastern District of Virginia. On September 30, 2009, Plaintiff sought leave to proceed *in forma pauperis* in order to challenge a state court child support matter. *See* Motion, *Rutledge v. Va. Dep't of Soc. Servs.*,

No. 2:09CV00483 (E.D. Va. Sept. 30, 2009), ECF No. 1. In connection with events that had occurred two-and-a-half years prior, he claimed that he was not served with a show cause order, was improperly arrested for failure to appear, and was required to pay too much child support. *See* Complaint at 1–12, 20–21, *Rutledge*, No. 2:09CV000483, ECF No. 3.

Plaintiff sought to have the court overturn his state conviction for contempt, order a new paternity hearing, review his child support obligations, and award $200,000 dollars "in punitive damages for intentional, willful, wanton, malicious character of wrongdoing [sic]." *Id.* The district court noted that it would be improper to weigh in on an ongoing child support case in light of *Younger* abstention and the *Rooker-Feldman* doctrine.[5] Dismissal Order at 3–4, *Rutledge*, No. 2:09CV000483, ECF No. 2. Accordingly, on November 5, 2009, the district court granted Plaintiff's motion to proceed *in forma pauperis*, but dismissed the case for failure to state a claim. *Id.* at 1, 4.

Less than one year later, Plaintiff initiated another series of *pro se* filings with the federal courts. On August 10, 2010, he filed a motion for leave to proceed *in forma pauperis* in the Western District of Virginia. In the Complaint, Plaintiff alleged that he was walking down the sidewalk when a uniformed police officer stopped him to ask a series of questions. *See*

---

[5] *Younger* abstention "generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (internal quotes and citations omitted) (citing *Younger v. Harris*, 401 U.S. 37, 43–45 (1971)). Abstention is mandatory when: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Id.*

The *Rooker-Feldman* doctrine provides that federal district courts lack subject-matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). In essence, federal district courts must not engage in what amounts to appellate review of a state court's decision.

Complaint, *Rutledge v. Town of Chatham*, No. 4:10CV00035 (W.D. Va. Aug. 10, 2010), ECF No. 3. Although he was not arrested or cited for any violation of the law, Plaintiff argued that his constitutional rights were infringed by the encounter, and named approximately thirteen (13) different individuals and units of government as defendants.[6] He sought $36 million dollars in damages for "pain and suffering, emotional distress, humiliation, [and] injury to the plaintiffs reputation [sic]." *Id.* at 6.

I allowed Plaintiff to proceed *in forma pauperis*, and the matter was fully litigated. After substantial briefing, I ultimately dismissed without prejudice the claims against all defendants, except Officer Roach, on the grounds they were either barred by the Eleventh Amendment or Plaintiff had failed to state a claim. *Rutledge v. Town of Chatham*, No. 4:10CV00035, 2010 WL 3835662, at *3–4 (W.D. Va. Sept. 30, 2010). I later dismissed the claims against Officer Roach with prejudice, concluding that the officer had not "seized" Plaintiff for Fourth Amendment purposes and, in any event, would be entitled to qualified immunity. *Rutledge v. Town of Chatham*, No. 4:10CV00035, 2010 WL 4791840, at *3–5, *8 (W.D. Va. Nov. 18, 2010). Plaintiff appealed, and the Fourth Circuit affirmed both decisions. *Rutledge v. Roach*, 414 F. App'x 568 (4th Cir. 2011) (per curiam) (unpublished).

---

[6] In his Complaint, Plaintiff named: (1) the Town of Chatham, Va.; (2) Officer Roach of the Chatham Police Department; (3) the Chatham, Va. Police Department; (4) Chief Marvin Wright of the Chatham, Va. Police Department; (5) the Pittsylvania County Board of Supervisors; (6) Governor of Virginia Bob McDonnell; (7) Virginia Attorney General Kenneth T. Cuccinelli, II; (8) Governor of Arizona Jan Brewer; (9) Arizona Attorney General Terry Goddard; (10) the Commonwealth of Virginia; (11) the City of Danville, Va.; and (12) the City of Danville, Va. Police Department. Plaintiff later included the Danville City Attorney as a defendant in subsequent filings, but made no actual allegations of wrongdoing against him. *See Rutledge v. Town of Chatham*, No. 4:10CV00035, at 8 (W.D. Va. Sept. 30, 2010) (Memorandum Opinion). With respect to the claims against Arizona officials, Plaintiff alluded to the controversy surrounding Arizona's immigration policies, and argued that "[t]he State of Arizona created the climate and pattern for this type of misconduct to happen all across the country." Complaint at 6, *Rutledge*, No. 4:10CV00035 (W.D. Va. Aug. 10, 2010), ECF No. 3.

Prior to my final dismissal order in this case, however, Plaintiff had initiated another suit in the Western District of Virginia. On October 29, 2010, Plaintiff filed an application to proceed *in forma pauperis* in what I characterized as "an attempt to revive the Chatham Defendants" from the previous lawsuit. *See Rutledge v. Town of Chatham*, No. 4:10CV00054, at 1 (W.D. Va. Nov. 5, 2010) (Memorandum Opinion denying IFP status). I observed that the "Proposed Complaint in the case at bar arises from precisely the same set of operative facts as the suit in 4:10CV00035, which the Plaintiff filed but three months ago," and denied his motion for leave to proceed *in forma pauperis*. *Id.* at 1, 4. Plaintiff did not pay the filing fees, and his case was terminated on November 22, 2010.

On December 13, 2010, Plaintiff initiated his third federal lawsuit since August of that same year. Plaintiff claimed that his girlfriend's credit card had been improperly declined after dining at a Hooters restaurant, and alleged that the restaurant had violated his civil rights when they threatened him with criminal prosecution and defamed his character. *See Rutledge v. Hooters of America, Inc.*, No. 2:10CV00608, at 1 (E.D. Va. Dec. 20, 2010) (Dismissal Order). In a Proposed Complaint filed in the Eastern District of Virginia, Plaintiff named Hooters of America, Inc., Hooters Restaurant, and three employees as defendants in a civil rights action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution through 42 U.S.C. § 1983. *Id.* at 2–3. Plaintiff sought $500,000.00 dollars in compensatory damages and $100,000.00 dollars in punitive damages from each of the defendants.

With respect to the financial affidavit that Plaintiff included with his application to proceed IFP, the district court first observed:

> Plaintiff seeks to proceed *in forma pauperis*. Despite the suit's underlying premise that sufficient funds were available in the

> credit card account to pay for the Hooters meal, Plaintiff claims that he has no assets whatsoever other than $20 in his bank account and $20 in cash. Plaintiff has listed no expenses of any type. Plaintiff has sworn that the information he has provided is true. Therefore, despite Plaintiff's dubious representations, Plaintiff's motion to proceed *in forma pauperis* is granted.

*Id.* at 1. Turning to address the merits, however, the court concluded that "[a]ll [of] Plaintiff's claims of violations of federal laws or rights fail for fundamental reasons." *Id.* at 3. Accordingly, the district court dismissed the action for failure to state any plausible claim of entitlement to relief over which the court would have federal question jurisdiction. *Id.*

Five months later, on May 20, 2011, Plaintiff initiated his seventh *pro se* federal lawsuit since March of 2009. *See Rutledge v. Va. Att'y Gen. Ken Cuccinelli*, No. 2:11CV00286 (E.D. Va. June 7, 2011) (order granting leave to proceed *in forma pauperis*). While a student at Norfolk State University, Plaintiff resided in a university-owned dormitory. *Id.* at 1. He alleged that resident assistants and university police entered his room without his consent or a warrant after a resident assistant reported smelling smoke. *Id.* His *pro se* complaint was "a forty-four page narrative, naming eighteen Defendants and referencing over thirty different 'theories' of recovery." *Rutledge*, No. 2:11CV00286, at 1 (E.D. Va. July 29, 2011) (dismissal order). It referenced "concepts that are wholly irrelevant to the above facts, such as wrongful death damages and aviation law," and left the court unable to "ascertain with any certainty what causes of action are asserted against which Defendant." *Rutledge*, No. 2:11CV00286, at 2 (E.D. Va. June 7, 2011) (order granting leave to proceed *in forma pauperis*).

In order to allow Plaintiff the opportunity to refine his pleadings, the court granted his motion to proceed *in forma pauperis* and ordered Plaintiff to submit an Amended Complaint within thirty (30) days. *Id.* At Plaintiff's request, the court granted an extension of additional time to comply with its Order. *See Rutledge*, No. 2:11CV00286 (E.D. Va. July 7, 2011) (order

granting request for extension of filing deadline). Despite the extension, Plaintiff never submitted an Amended Complaint or filed any additional papers in federal court concerning the Norfolk State University allegations. Accordingly, the action was dismissed on July 29, 2011. *See Rutledge*, No. 2:11CV00286, at 1 (E.D. Va. July 29, 2011) (dismissal order).

On August 13, 2012, Plaintiff once again filed suit in the Western District of Virginia against the Town of Chatham, Virginia and nine (9) other defendants. Plaintiff claimed that he witnessed Officer Roach of the Chatham Police Department stop and ticket two cars on Route 29, outside of the jurisdiction of the Town of Chatham, and alleged that this practice was unconstitutional. *See* Complaint at 3, *Rutledge v. Town of Chatham*, No. 4:12CV00033 (W.D. Va. Aug. 13, 2012), ECF No. 3. Despite the fact that Plaintiff was never pulled over, much less ticketed, he purported to bring the action "on behalf of the Commonwealth of Virginia pursuant to [the Virginia Fraud Against Taxpayers Act]." *Id.* at 2. Plaintiff sought declaratory and injunctive relief, a temporary ban on traffic stops along Route 29, the invalidation of all non-felonious traffic tickets and fines from the past two years that were prosecuted in Pittsylvania County, and total damages "at 1 million dollars and up for wrongful stops, tickets, and grant fraud that was done to all private citizens [sic]." *Id.* at 15.

I denied Plaintiff's request to proceed *in forma pauperis* for lack of standing and jurisdiction. *Rutledge v. Town of Chatham*, No. 4:12CV00033 (W.D. Va. Aug. 14, 2012) (order denying leave to proceed *in forma pauperis*). In response, Plaintiff filed a motion to place the Complaint under seal for one hundred twenty (120) days, and requested an additional thirty (30) days to pay the filing fee. *See Rutledge*, No. 4:12CV00033 (W.D. Va. Aug. 23, 2012) (order as to Motion for Reconsideration). I denied Plaintiff's extraordinary request to place the Complaint under seal, but granted his request for an additional thirty (30) days to pay the filing fee. *Id.* At

the end of this time period, Plaintiff filed a "Request to the Court to non suit case to have it filed in Virginia state court [sic]," which I construed as a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and granted accordingly. *Rutledge*, No. 4:12CV00033 (W.D. Va. Sept. 24, 2012) (dismissal order).

Twenty-two (22) days later, on October 16, 2012, Plaintiff applied for leave to proceed *in forma pauperis* in order to file an action against Virginia State Trooper Officer Davis, Virginia State Trooper Wayne Spooner, and the Virginia State Police. The proposed complaint was a narrative-style account of Plaintiff's appearance in Pittsylvania County General District Court to answer for a speeding ticket. *See* Complaint, *Rutledge v. Va. State Trooper Officer Davis*, No. 4:12CV00046 (W.D. Va. Oct. 16, 2012), ECF No. 3. In essence, Officer Davis was unable to produce a radar certification for the date of the ticket and the case was dismissed. *Id.* at 1–4.

Plaintiff accused Officers Davis and Spooner of "initiating a malicious prosecution, conspiracy, and obstruction of justice," "the creation of false evidence," "giving false police reports, preparing and signing false traffic complaints and/or preparing false witness (radar) statements," perjury, unlawful detainment, and violations of the Fourth Amendment. *Id.* at 3–4. Plaintiff sought injunctive relief against the Virginia State Police, requiring they "throw out or dismiss any and all cases 'speed related' in which they do not have valid and proper police procedure radar certifications for those dates [sic]," and demanded $100,000.00 dollars in general damages and $50,000.00 dollars in punitive damages from each of the officers. *Id.* at 4. I denied the IFP application on the grounds of frivolity and failure to state a claim. *Rutledge*, No. 4:12CV00046 (W.D. Va. Oct. 18, 2012) (order denying leave to proceed *in forma pauperis*). Plaintiff failed to pay the filing fee within fourteen (14) days, and I dismissed the case on November 5, 2012.

On August 14, 2013, Plaintiff filed an application for leave to proceed *in forma pauperis* in order to bring an action against the City of Danville, Virginia, as well as Officer Lancaster and Chief Broadfoot of the Danville Police Department. Plaintiff claimed that he was stopped while driving by Officer Lancaster, who was wearing audio and video recording devices that captured the encounter. *See* Complaint at 1, *Rutledge v. Lancaster*, No. 4:13CV00043 (W.D. Va. Aug. 14, 2013), ECF No. 3. While no recordings were ever used as evidence against him, Plaintiff alleged that use of the devices was a *per se* violation of the Fourth Amendment. *Id.* at 1. In addition, Plaintiff claimed that the Street Crimes Unit of the Danville Police was engaging in discriminatory tactics by targeting predominantly African-American neighborhoods and citizens. *Id.* at 2–4. Among other forms of relief requested, Plaintiff sought an injunction requiring officers to obtain consent before recording an individual's voice, and prohibiting the use of audio equipment altogether "until they become compliant by Virginia Wiretapping law or General Assembly has change the law to allow for its use [sic]." *Id.* at 5. I denied Plaintiff's application to proceed *in forma pauperis*, and dismissed the case after Plaintiff failed to pay the filing fee by August 30, 2013.

Seven (7) days after filing the previous lawsuit, however, Plaintiff initiated an unrelated action in the Eastern District of Virginia. On August 21, 2013, Plaintiff requested leave to proceed *in forma pauperis* in an action against Officer Tessier, Officer Plaza, and a "John Doe" supervisor of the Norfolk Police Department. According to the Complaint, Plaintiff was driving with a passenger in his vehicle when they were stopped by the officers. *See* Complaint at 1, *Rutledge v. Officer Tessier*, No. 2:13CV00470 (E.D. Va. Aug. 23, 2013), ECF No. 3. A dispute arose between the officers and Plaintiff's passenger over the passenger's refusal to comply with

the officer's demands for identification.[7] Plaintiff claims that he was unlawfully stopped, and argues, on behalf of himself and his passenger, that the subsequent encounter with the police violated their constitutional rights. *Id.* at 3. The court granted Plaintiff's motion to proceed *in forma pauperis*, and the matter is currently pending before the Eastern District of Virginia.

The present action, filed November 18, 2013, is the twelfth (12th) *pro se* federal lawsuit that Plaintiff has filed in Virginia since March of 2009. The allegations stem from Plaintiff's plan to host an event featuring adult entertainment at a venue known as the Continental Ballroom. (*See* Compl. 2–4, ECF No. 3.) When a police officer advised the owner of that venue that the event would likely violate city ordinances and could result in the revocation of his alcoholic beverage license, the owner declined to host the event. (*Id.*) The Complaint is styled as a civil rights action pursuant to 42 U.S.C. § 1983, and alleges that the seven (7) defendants violated the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. (*Id.* at 4–6.) It also includes a facial challenge to city ordinances that regulate obscenity and adult entertainment. (*Id.* at 6–10.) Plaintiff is seeking a number of forms of declaratory and injunctive relief, as well as "$10 million in damages from each defendant on each cause of action," and "1,000,000 in punitive damages on each cause of action against the defendants," except for the Commonwealth of Virginia. (*Id.* at 11.)

On November 21, 2013, I denied Plaintiff's application to proceed *in forma pauperis* for lack of standing and failure to state a non-frivolous claim. (*See* Order, Nov. 21, 2013, ECF No. 2.) Given the history of frivolous litigation, I also ordered Plaintiff to appear before this Court and show cause why he should not be subject to a pre-filing injunction. (*See* Order to Show

---

[7] According to Plaintiff, the passenger had legally changed his name from "Vernon Evans" to "Vernon C. Evans-El." *See* Complaint at 2, *Rutledge v. Officer Tessier*, No. 2:13CV00470 (E.D. Va. Aug. 23, 2013), ECF No. 3. Plaintiff claims that Mr. Evans-El gave Officer Tessier his full legal name, but refused to provide his birth name, state-issued identification card, or social security number as requested until the officer threatened him with arrest. *Id.* at 2–3.

- 11 -

Cause, Nov. 21, 2013, ECF No. 4.) Plaintiff appeared before this Court on December 5, 2013, and was provided an opportunity to be heard. During the hearing, I also questioned Plaintiff regarding his participation in other lawsuits.[8] At the conclusion of the hearing, I informed Plaintiff that I was imposing a pre-filing injunction against him. I formally issued the Injunction on December 9, 2013. (*See* Pre-Filing Inj., Dec. 9, 2013, ECF No. 7.)

## II.  DISCUSSION

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), federal courts are authorized to restrict access to litigants who repeatedly file frivolous or vexatious lawsuits. *Haggins v. Tarwater*, No. 3:13–cv–00050–MOC–DSC, 2013 WL 1319400, at *1 (W.D.N.C. Mar. 29, 2013); *see also In re Burnley*, 988 F.2d 1, 3–4 (4th Cir. 1992) (recognizing district court's power to impose limits upon those who abuse the judicial system). Further, district courts have "inherent power to control the judicial process and litigation" when necessary to address conduct that abuses the judicial process. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir.

---

[8] I have reason to believe that Plaintiff is participating in lawsuits filed by other *pro se* litigants before this Court. In particular, I believe that Plaintiff has counseled Mr. Lafayette Hodnett and Mr. Michael Elder concerning their actions against the Town of Chatham and the City of Danville, respectively. *See Elder v. City of Danville*, No. 4:13CV00047, 2013 WL 6524651 (W.D. Va. Dec. 12, 2013); *Hodnett v. Town of Chatham*, No. 4:13CV00048 (W.D. Va. Aug. 29, 2013). The complaints in those cases evidence a structure, format, and narrative style that is remarkably similar to that of Plaintiff's typical filings. Both documents include similar headers and footers that suggest they were e-mailed prior to their submission (*e.g.*, "michaelelderlawsuit.docx" and "lafayerttefederalsuitnewer.docx"). In Mr. Elder's Complaint, the narrative voice changes abruptly and intermittently from first to second to third-person perspective (*e.g.*, "[the officer] blocks [Mr. Elder] in and he calls out his name," "I [(Mr. Elder)] had the paperwork in my hands," and "Location: 1353 North Main Street in front of your [(Mr. Elder's)] sister apartment Danville, Va [sic]"). Complaint at 1–2, *Elder v. City of Danville*, No. 4:13CV00047 (W.D. Va. Aug. 27, 2013), ECF No. 3. In addition, in his Response in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim, Mr. Elder inadvertently included the body of an email from him to "merletrutledge@gmail.com," dated two days prior to filing. The subject line of that email reads: "Make sure this is in the right order & has the right paragraphs outlined." Pl.'s Resp. in Opp. of Defs.' Mot. To Dismiss, *Elder v. City of Danville*, No. 4:13CV00047 (W.D. Va. Nov. 12, 2013), ECF No. 30. At the hearing, Plaintiff acknowledged that he knew Mr. Elder and Mr. Hodnett. He maintained that he did not write anything for anyone else, and indicated that his participation was limited to editing and allowing others to use his emails.

2001). In *Safir v. United States Lines, Inc.*, the Second Circuit identified five factors that district courts should consider when determining whether or not to restrict a litigant's future access to the courts:

> (1) [T]he litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

792 F.2d 19, 24 (2d Cir. 1986). The ultimate question for the court "is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

In *Cromer v. Kraft Foods North America, Inc.*, the Fourth Circuit adopted the *Safir* factors and supplemented them with additional guidance concerning the imposition of pre-filing injunctions. 390 F.3d 812 (4th Cir. 2004). In particular, the court warned that the "'use of such measures against a *pro se* plaintiff should be approached with particular caution' and should 'remain very much the exception to the general rule of free access to the courts.'" *Id.* at 818 (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)). Pre-filing injunctions are a "drastic remedy" that must be used sparingly and only when justified by exigent circumstances. *Id.* at 817–18. Litigants must be given notice and an opportunity to be heard, and the injunction must be "narrowly tailored to fit the specific circumstances at issue." *Id.* at 818–19.

As always, I am mindful of Plaintiff's status as a *pro se* litigant. Although *pro se* complaints involving civil rights issues should rightly be construed liberally, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *pro se* complaints must still abide by minimum standards of

rationality and specificity. With respect to the Court's inherent power to curb abuse of judicial process, there are no exceptions for *pro se* litigants. *Haggins v. Tarwater*, No. 3:13–cv–00050–MOC–DSC, 2013 WL 1319400, at *1 (W.D.N.C. Mar. 29, 2013) (citing *Armstrong v. Koury Corp.*, 16 F.Supp.2d 616, 620 (M.D.N.C. 1998)).

After considering the *Safir* factors and Plaintiff's litigation history, I find the imposition of a pre-filing injunction to be an appropriate measure. Plaintiff has a considerable history of filing "vexatious, harassing or duplicative lawsuits," *see Safir*, 792 F.2d at 24, and has provided no indication that he intends to relent. While I cannot speak to Plaintiff's subjective motives in pursuing the litigation, I find it difficult to believe that he proceeds with "an objective good faith expectation of prevailing." [9] *Id.* In *Safir*, the court found significance in the fact that "most of [the plaintiff's] claims have been resoundingly rejected by the courts." *Id.* Plaintiff, too, has been told repeatedly that his claims lack standing and merit. And yet, Plaintiff remains undeterred.

Plaintiff has proceeded *pro se* and sought *in forma pauperis* status in every one of his federal filings. While this lessens any financial burden to Plaintiff associated with filing a lawsuit, it has equally "caused needless expense to other parties" and "posed an unnecessary burden on the courts and their personnel." *Id.* Taxpayers have been forced to finance the defense to Plaintiff's ongoing campaign against Virginia local government, and Plaintiff has consumed considerable quantities of scarce judicial assets. For each narrative-style complaint Plaintiff files against a dozen or more defendants, court staff are confronted with the Sisyphean

---

[9] It is worth noting that the *ad damnum* clauses contained in Plaintiff's complaints are often baffling and idiosyncratic, and reflect subjective beliefs about the outcome of litigation that are objectively untenable. For example, after being pulled over on Valentine's Day, Plaintiff demanded "$2 million dollars or a simple letter of apology and reprimand for the police officer." *See* Complaint at 5, *Rutledge v. City of Norfolk*, No. 2:09CV00129 (E.D. Va. Mar. 30, 2009), ECF No. 3. While I understand that the value of an apology is inherently subjective, I am less sympathetic to Plaintiff's assertion that any alleged wrongdoing merits a $2 million dollar award, and puzzled by their suggested equivalency.

challenge of wading through the newspaper clippings, unsupported legal conclusions, and personal musings that constitute Plaintiff's typical filing. No matter how slight the perceived injury, Plaintiff has endeavored to make it a federal case.

In light of this pattern of conduct and the burden it places on the federal courts, I find that no other sanction "would be adequate to protect the courts and other parties." *Id.* Plaintiff has continued to initiate new civil actions regardless of the fact that nearly all of them have been adjudicated to be meritless. In addition, many of his lawsuits are simple permutations of the same allegations against the police and government that Plaintiff has been filing from the beginning. I therefore "cannot ignore the obvious fact that mere dismissal of this action will not hinder [Plaintiff] from initiating further similar proceedings." *Id.* His "abuse of the judicial process, despite his subjective conviction that he has suffered an unremedied injury, cannot be countenanced." *Id.* Ultimately, I find that the evidence leads inescapably to the conclusion that Plaintiff will "continue to abuse the judicial process and harass other parties." *Id.* I therefore find that the circumstances warrant the imposition of a pre-filing injunction to restrict Plaintiff's future federal litigation.

I am mindful of the Fourth Circuit's guidance that "even if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a prefiling injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Cromer*, 390 F.3d at 818 (citations omitted). Under circumstances similar to these, other courts have used their discretionary authority to implement a similar pre-filing review procedure. *See, e.g.*, *Graham v. Riddle*, 554 F.2d 133, 135 (4th Cir. 1977) (affirming district court's injunction upon inmate litigant conditioning right to file *in forma pauperis* upon good cause shown and imposing a $15 fee for every frivolous action filed); *Harris*

*v. Bush*, No. Civ. A. 7:05CV00566, 2005 WL 2217047 (W.D. Va. Sept. 12, 2005) (enjoining litigant from filing further civil actions without good cause shown).

As a preliminary matter, to my knowledge Plaintiff's abusive conduct has been limited to filings in the Eastern and Western Districts of Virginia. Accordingly, the scope of the Injunction is limited to federal trial courts sitting in the Commonwealth of Virginia. Unlike *Safir*, however, where the abusive litigation focused on the same defendants, *see Safir*, 792 F.2d at 20–22, Plaintiff has cast his net far and wide. As the Third Circuit noted, "a district court has the authority to require court permission for all subsequent filings once a pattern of vexatious litigation transcends a particular dispute . . . ." *Chipps v. United States District Court for the Middle District of Pennsylvania*, 882 F.2d 72, 73 (3d Cir. 1989). The conduct at issue transcends any one particular dispute. As a consequence, I have imposed a pre-filing review procedure which will apply to any new action or proceeding in Virginia federal courts.

It is important to note that this Pre-Filing Injunction does not foreclose Plaintiff's access to the federal courts. Plaintiff was provided notice and an opportunity to be heard, and as I explained at the hearing, this Injunction is not intended to be a vindictive measure in any way. Rather, its imposition is motivated by the necessity of preserving the assets of the Court. In effect, this Injunction will allow the courts to dispense with the formalities of granting Plaintiff leave to proceed *in forma pauperis* and then dismissing the complaint for lack of merit. Plaintiff will retain access to the federal courts for redress of any legitimate grievance; he will simply be required to demonstrate good cause prior to filing.

## III. CONCLUSION

Plaintiff has a history of filing frivolous lawsuits against local government, the police, and other defendants. Given this history of frivolous litigation, I find it likely that Plaintiff will "continue to abuse the judicial process and harass other parties." *See Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

For the foregoing reasons, a Pre-Filing Injunction was imposed on December 9, 2013 [ECF No. 7]. In accordance with that order, Plaintiff is **ENJOINED** as follows:

1) Plaintiff, and anyone acting on his behalf, is hereby enjoined from filing any new action or proceeding in any federal court within the Commonwealth of Virginia, without first obtaining leave of that court;

2) Plaintiff, and anyone acting on his behalf, is hereby enjoined from filing any further papers or pleadings in any case, either pending or terminated, in the Western District of Virginia, without first obtaining leave of the court;

3) Leave will be forthcoming upon Plaintiff's demonstration, through a properly filed motion, that the proposed filing: (1) can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure; (2) is not repetitive or violative of a court order; and (3) is in compliance with Rule 11 of the Federal Rules of Civil Procedure;

4) Plaintiff, and anyone acting on his behalf, is hereby required to submit a copy of this Pre-Filing Injunction and accompanying Memorandum Opinion as a necessary component of any request for leave which he attempts to file in any federal court; and

5) Plaintiff is hereby enjoined from providing legal advice or counsel to any other person or entity, and is advised that the unauthorized practice of law is a Class 1 Misdemeanor in the Commonwealth of Virginia.

Plaintiff is advised that I will summarily deny any motion or action that does not strictly comply with the Pre-Filing Injunction and which fails to show good cause why Plaintiff should be permitted to file a new civil action.

The Clerk has been instructed not to accept for filing any papers from Plaintiff or anyone acting on his behalf that are not accompanied by a signed order from a judge in compliance with the directions that I have provided.

The Clerk is directed to send a copy of this Memorandum Opinion to Plaintiff and **DISMISS** this case from the active docket of the Court.

Entered this 20th day of December, 2013.

                                                s/Jackson L. Kiser  
                                                Senior United States District Judge